IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
=============
No. 04-0414
=============
 
The Hearst Corporation 
d/b/a
The Houston Chronicle 
Publishing Company and Evan 
Moore,
Petitioners
 
v.
 
Jack Skeen, Jr., David E. 
Dobbs, and Alicia Cashell, 

Respondents 

 
 
========================================================
On Petition for Review from the Court of 
Appeals for the
Second District of 
Texas
========================================================
 
 
 
PER CURIAM
 
In this 
interlocutory appeal we consider whether it was error to deny the media 
defendants’ motion for summary judgment against the plaintiffs’ libel claim. 
Because the plaintiffs, who were public figures, failed to raise a fact issue on 
actual malice, we conclude that the media defendants were entitled to summary 
judgment.  
On June 11, 2000, The Hearst 
Corporation published “Justice Under Fire” in The 
Houston Chronicle. Written by Evan Moore, the article contained pointed 
criticisms of the Smith 
County criminal justice system and 
included three companion articles examining specific cases. With the subheading 
“‘Win at all costs’ is Smith 
County’s rule, critics claim,” the 
lead article reported that Smith 
County “is noted for its own brand of 
justice,” which is “driven by aggressive prosecutors who achieve some of the 
state’s longest sentences.” The article stated, “Critics say 
Smith 
County’s justice system is tainted 
and inequitable.” It also declared that 
Smith 
County prosecutors “have been accused 
of serious infractions” including “suppressing evidence, encouraging perjury and 
practicing selective prosecution.” 
Claiming the 
article was false and malicious, three Smith County prosecutors named in the 
article, District Attorney Jack Skeen and two of his assistants, David Dobbs and 
Alicia Cashell, filed a defamation suit against Hearst 
and Moore. The trial court denied Hearst and 
Moore’s motion for summary judgment, 
and on interlocutory appeal, the court of appeals affirmed the trial court’s 
ruling. 130 S.W.3d 910. We have jurisdiction over the 
petition for review in this interlocutory appeal because the trial court denied 
the media defendants’ motion for summary judgment in a defamation case. 
Tex. Gov’t Code § 22.225(d); 
Tex. Civ. Prac. & Rem. Code § 51.014(a)(6). 
To recover 
for defamation, the public-figure plaintiffs must prove that Hearst and Moore 
published a false[1] 
and defamatory statement with actual malice. See Huckabee v. Time Warner Entm’t Co. 
L.P., 19 S.W.3d 413, 420 
(Tex. 2000). Although the parties 
disputed whether the article was capable of a defamatory meaning before the 
court of appeals, the issue was not raised here. Moreover, we need not decide 
whether the article was actually false to resolve this appeal. The plaintiffs 
can prevail here only if there is some evidence that Hearst and Moore published 
the article with actual malice.  

To establish 
actual malice, the plaintiffs must prove Hearst and Moore published the article 
with either knowledge of the falsity or reckless disregard for the truth. See 
New Times, Inc. v. Isaacks, ___ S.W.3d ___, ___ 
(Tex. 2004). Knowledge of falsity 
is a relatively clear standard, but reckless disregard is much less so. Bentley v. Bunton, 94 S.W.3d 561, 
591 (Tex. 2002). 
Reckless disregard is a subjective standard, requiring evidence that Hearst and 
Moore entertained serious doubts as 
to the truth of the article at the time it was published. See id. 
A libel 
defendant is entitled to summary judgment under 
Texas law if it can negate actual 
malice as a matter of law. Huckabee, 19 S.W.3d at 420. Hearst and Moore supported their motion for 
summary judgment with numerous exhibits, including 
Moore’s affidavit, which stated he 
believed the article was true and accurate based on his extensive research. 
Having negated actual malice, the burden shifted to the plaintiffs to raise a 
fact issue. See id. at 424. 
The 
plaintiffs contend that Moore knew 
the article was false because the ten cases discussed in the article were a 
relatively insignificant sample from which to conclude that the 
Smith 
County 
D.A.’s office routinely engaged in 
unethical practices to win convictions. At 
Moore’s deposition, the plaintiffs’ 
attorney pointed out that these ten cases amounted to only .04% of the total 
indictments handled during D.A. Skeen’s service. 
Moore admitted that he had done no 
statistical analysis but had only focused on the problem cases he had 
discovered. The fact that Moore had 
not reviewed every indictment during D.A. Skeen’s service or discussed a larger 
number of problem cases is not evidence that he knew 
the article contained false statements.
Arguing the 
article was published with reckless disregard for the truth, the plaintiffs claim Hearst and Moore purposefully avoided the 
truth, relied on dubious information from bias sources, deviated from 
professional standards of care, and were motivated to fabricate. See 
Bentley, 94 S.W.3d at 596.  
“A 
failure to investigate fully is not evidence of actual malice; a purposeful 
avoidance of the truth is.” Bentley, 94 S.W.3d at 
596. We analyzed evidence of purposeful avoidance in Bentley when 
a talk show host was sued for libel after repeatedly accusing a judge of being 
corrupt. Id. at 
601. Although the host claimed that his accusations were based on his 
investigations, there was a “complete absence of any evidence that a single soul 
. . . ever concurred in [the host’s] accusations of misconduct against [the 
judge]. All those who could have shown [the host] that his 
charges were wrong [the host] deliberately ignored.” 
Id. For example, the 
host made a false accusation that the judge had improperly delayed a criminal 
trial without even contacting any attorney involved in the case to inquire about 
the delay. Id. 
Similarly, 
in Harte-Hanks Communications, Inc. v. Connaughton, a newspaper deliberately avoided verifying 
false allegations it printed about a judicial candidate. 491 
U.S. 657, 
692 (1989). The candidate had persuaded a certain Stephens to give him a 
recorded statement concerning bribes that she had made to his opponent’s 
employee. Id. at 
668-69.  Stephens’ sister, 
who was present for the recorded statement, told the newspaper that the 
candidate used “dirty tricks” to get Stephens’ statement with the intent of 
blackmailing his incumbent opponent into resigning before the election. 
Id. at 
670. Before printing the sister’s allegations, the newspaper failed to 
interview Stephens, the key witness, or listen to the tape provided of Stephens’ 
recorded statement. Id. at 
692. By ignoring the two sources that could objectively verify the 
sister’s allegations, the newspaper had purposefully avoided discovering facts 
that might show the falsity of the allegations. 
Id.
In 
contrast, we held in Huckabee that the 
purposeful avoidance theory did not apply because “no source could have easily 
proved or disproved the documentary’s allegations.” 19 S.W.3d 
at 428. When a documentary criticized a judge’s order granting an allegedly abusive father custody of a child, the judge 
sued, arguing the filmmakers had purposefully avoided discovering the truth. 
Id. at 
427. The filmmakers’ extensive research, which involved interviewing 
several people on both sides of the story, including the judge, and reading 
transcripts of the case, precluded a finding of purposeful avoidance. 
Id. at 
428. “Although the filmmakers did not interview [the father or his 
lawyers], they were not required to continue their research until they could 
find one more person who agreed with [the judge’s] order.” 
Id. (indicating failure to 
track down every possible source is not purposeful avoidance).
Like the 
filmmakers’ research in Huckabee, 
Moore’s five months of research 
involved interviewing parties on both sides of the issue, including the 
plaintiffs, and reviewing the court records of the cases discussed in the 
article. Furthermore, no source existed that could have easily disproved the 
criticisms of the Smith 
County 
D.A.’s office included in the 
article. The evidence simply does not support a purposeful avoidance theory.
“An 
understandable misinterpretation of ambiguous facts does not show actual malice, 
but inherently improbable assertions and statements made on information that is 
obviously dubious may show actual malice.” Bentley, 94 
S.W.3d at 596. In Harte-Hanks, 
despite knowing the judicial candidate had turned the tape concerning bribery 
over to the police, the newspaper still published the improbable assertion that 
he intended to blackmail his opponent with the tape. 491 
U.S. at 
691. Moreover, the sister’s uncorroborated allegations were doubtful 
because every other witness the newspaper interviewed denied the sister’s 
version of the events. Id. 
Additionally, the sister’s hesitant demeanor and inaudible responses in her 
taped interview with the newspaper raised “obvious doubts about her veracity.” 
Id. With the sister as the 
only source of the dubious allegations, the evidence showed the newspaper had 
recklessly disregarded the truth in publishing the article. 
Id. at 
691-93. 
In 
the current case, Moore had many 
sources corroborating the criticisms of the 
Smith 
County 
D.A.’s office. Moore testified that 
he spoke to over twenty attorneys, who told him that the Smith County D.A.’s 
office: was too aggressive; was too closely aligned with law enforcement; was 
overly influenced by prominence of the victim or accused; had sentences that 
were harsh or excessive as compared to other jurisdictions; and had suppressed 
evidence or encouraged false testimony to win convictions. Although most 
conditioned their responses on anonymity, several attorneys, including perhaps 
most significantly a former Smith 
County 
D.A., allowed their names to appear 
in the article. The criticisms were not inherently improbable because 
Moore had reviewed multiple 
statements in court-filed documents alleging prosecutorial misconduct. Such 
documents included: a Court of Criminal Appeals opinion[2] 
stating an assistant D.A. attempted to interview a defendant without his 
attorney’s knowledge; a writ of habeas corpus petition alleging the Smith County 
D.A.’s office suppressed exculpatory evidence in the Mims case; a 
deposition in the Smith case of chief prosecutor Dobbs, in which he 
admitted confronting the plaintiff of the malicious prosecution case in a bar 
and asking “how much money would it take to make it go away”; and a motion for 
new trial in the Bendy case that included affidavits accusing the 
prosecutor, Cashell, of soliciting a key witness to 
perjure her testimony. Moore’s 
article was based on many sources that corroborated the criticisms, which his 
research showed were not inherently improbable. Therefore, no fact issue exists 
as to whether Moore relied on 
obviously doubtful sources of information for his article. 
“A 
lack of care or an injurious motive in making a statement is not alone proof of 
actual malice, but care and motive are factors to be considered.” 
Bentley, 94 S.W.3d at 596. In the current case, 
the plaintiffs presented an expert who testified about the professional standard 
for investigative reporting and concluded that the article was biased and failed 
to impartially give a balanced account of the information it discussed. Assuming 
this expert testimony should be considered, evidence that the article was 
written “from a particular point of view, even when [the article is] 
hard-hitting or sensationalistic, is no evidence of actual malice.” Huckabee, 19 S.W.3d at 425. 

To 
establish motivation for recklessly disregarding the truth, the plaintiffs 
presented evidence that Hearst and 
Moore ignored the plaintiffs’ letter 
questioning the truth of the article because they received the letter two days 
before the article’s publication deadline. This, however, is no evidence of 
actual malice. First, Hearst and Moore incorporated a portion of the letter into 
the article in the form of a quote by the plaintiffs. Second, “[t]he mere fact 
that a defamation defendant knows that a public figure has denied harmful 
allegations or offered an alternative explanation of events is not evidence that 
the defendant doubted the allegations.” Huckabee, 19 S.W.3d at 427. 
Third, without more, mere evidence that a newspaper was motivated to meet a 
publication deadline is no evidence of actual malice. See 
Harte-Hanks, 491 
U.S. at 
667 (discussing profit motives).  

Viewing 
the evidence in its entirety, no fact issue is raised as to whether the article 
was published with actual malice. Accordingly, without hearing argument, we 
grant the petition for review, reverse the court of appeals’ judgment, and 
render summary judgment in favor of Hearst and Moore. Tex. R. App. P. 59.1.
 
 
OPINION 
DELIVERED:         
March 11, 
2005
 




[1] Proving falsity in a public-figure defamation case is 
the plaintiff’s burden of proof; in such a case, the defendant does not have the 
burden of proving substantial truth as an affirmative defense. Bentley v. Bunton, 94 S.W.3d 561, 
586-87 (Tex. 2002). 

[2] Cook v. State, 940 S.W.2d 623, 626 (Tex. Crim. App. 
1996).